IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALLEN WOLFSON,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, SECURITIES AND EXCHANGE COMMISSION, RICHARD CLAYTON, HOLLAND & HART LLP, et al.,<br><br>   Defendants. | REPORT AND RECOMMENDATION<br><br>Case Nos.   2:06-cv-421-DB-PMW<br>                    2:06-cv-422-DB-PMW<br>                    2:06-cv-435-DB-PMW<br>                    2:06-cv-966-DB-PMW<br>                    2:06-cv-994-DB-PMW<br>                    2:07-cv-219-DB-PMW<br><br>District Judge Dee Benson<br><br>Magistrate Judge Paul M. Warner |

The above-captioned cases were referred to Magistrate Judge Paul M. Warner by District Judge Dee Benson pursuant to 28 U.S.C. § 636(b)(1)(B).[1] In all of the cases, Allen Wolfson ("Plaintiff") is proceeding pro se and was permitted to proceed in forma pauperis under 28 U.S.C. § 1915 (the "in forma pauperis statute").[2] Because Plaintiff is proceeding pro se, the

---

[1] *See Wolfson v. Clayton, et al.*, 2:06-cv-421-DB-PMW ("case no. 06-421"), docket no. 20; *Wolfson v. Sec. & Exch. Comm'n, et al.*, 2:06-cv-422-DB-PMW ("case no. 06-422"), docket nos. 11, 14; *Wolfson v. Sec. & Exch. Comm'n, et al.*, 2:06-cv-435-DB-PMW ("case no. 06-435"), docket nos. 4, 17, 18; *Wolfson v. Sec. & Exch. Comm'n, et al.*, 2:06-cv-966-DB-PMW ("case no. 06-966"), docket nos. 15, 16; *Wolfson v. United States, et al.*, 2:06-cv-994-DB-PMW ("case no. 06-994"), docket no. 11; *Wolfson v. Sec. & Exch. Comm'n, et al.*, 2:07-cv-219-DB-PMW ("case no. 07-219"), docket nos. 12, 13.

[2] *See* case no. 06-421, docket no. 8; case no. 06-422, docket no. 4; case no. 06-435, docket no. 6; case no. 06-966, docket no. 2; case no. 06-994, docket no. 2; case no. 07-219, docket no. 2.

court will construe his pleadings liberally. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## **RELEVANT BACKGROUND**

### Common Factual Background

All of the cases before the court stem from same set of basic underlying facts. In October 2003, the Securities and Exchange Commission (the "SEC") commenced a civil enforcement action in this court (the "SEC Action"), charging numerous corporate and individual defendants, including Plaintiff's son, David Wolfson, with violating certain federal securities laws.[3] The SEC's complaint sought injunctive, statutory, and equitable relief against the defendants, including disgorgement of their wrongful gains. Soon after that case was commenced, the SEC moved for appointment of a receiver. On January 12, 2004, the court appointed Richard D. Clayton ("Mr. Clayton"), giving him broad powers to preserve, take control of, and liquidate the defendants' property for the benefit of the defrauded investors. The receiver proceeded to discharge his duties, while the SEC obtained consent judgments from many of the defendants, including David Wolfson.

A year and a half later, on June 10, 2005, Plaintiff, who was not a party to the SEC Action, filed a motion for appointment of counsel in the SEC Action. In that motion, he identified himself as the father of David Wolfson and explained that he was currently

---

[3] *See Sec. & Exch. Comm'n v. Wolfson*, 2:03-cv-914-TS-DN. Much of the background set forth in this report and recommendation is taken nearly verbatim from an order and judgment issued by the United States Court of Appeals for the Tenth Circuit in the SEC Action. *See id.*, docket no. 785.

incarcerated at the Metropolitan Detention Center in New York City. Plaintiff asserted that certain of his assets had been taken illegally and fraudulently by Mr. Clayton as part of the SEC Action (the "Assets"). Plaintiff requested that the court appoint counsel to assist him in regaining the Assets. He did not formally request to intervene in the SEC Action.

The SEC opposed the motion, arguing that Plaintiff was not entitled to court-appointed counsel; that he was not entitled to intervene in the SEC Action; and that the Assets were subject to a power of attorney and control by his son, David Wolfson, and had been used in furtherance of the illegal securities fraud scheme. On July 25, 2005, Magistrate Judge David Nuffer issued a docket text order striking Plaintiff's motion for the reasons set forth in the SEC's opposition memorandum.[4]

Plaintiff proceeded to file a number of other pleadings with the court in the SEC Action. Although none of them was expressly entitled as a motion to intervene, two of them did discuss intervention under rule 24 of the Federal Rules of Civil Procedure. On March 9, 2006, District Judge Dale A. Kimball entered an order striking Plaintiff's pending motions and other pleadings on the basis that Plaintiff was not a party to the SEC Action.[5] Judge Kimball also noted that Plaintiff had never filed a formal motion to intervene in the SEC Action, nor had he demonstrated that he was entitled to intervene in the SEC Action. Plaintiff appealed Judge Kimball's order.[6]

---

[4] *See id.*, docket no. 501.

[5] *See id.*, docket no. 592.

[6] *See id.*, docket no. 598.

On November 2, 2007, the Tenth Circuit issued an order and judgment in which it vacated the judgment in the SEC Action to the extent it denied Plaintiff's attempts to intervene.[7] The SEC Action was remanded for the district court to consider Plaintiff's filings as motions to intervene and to evaluate said motions on their merits.

On remand, Judge Kimball recused himself from presiding over the SEC Action, and it was reassigned to District Judge Ted Stewart.[8]  On March 27, 2008, Judge Stewart issued a memorandum decision and order denying Plaintiff's motions to intervene in the SEC Action.[9] On the issue of ownership of the Assets, Judge Stewart found that Plaintiff had made several bald assertions about his ownership but offered no supporting evidence.  Judge Stewart also determined, based on the evidence presented regarding ownership, that the Assets were properly included in the receivership in the SEC Action as assets under the control of David Wolfson.

Plaintiff filed a timely notice of appeal of Judge Stewart's ruling with the Tenth Circuit.[10] On October 8, 2008, the Tenth Circuit issued an order and judgment affirming Judge Stewart's ruling.  *See Sec. & Exch. Comm'n v. Wolfson*, No. 08-4073 (10th Cir. Oct. 8, 2008).  In that order and judgment, the Tenth Circuit determined that while Plaintiff claimed he had "merely granted his son power of attorney because he was going to prison, the evidence of record shows that

---

[7] *See id.*, docket no. 785.

[8] *See id.*, docket no. 783.

[9] *See id.*, docket no. 801.

[10] *See id.*, docket no. 805.

David Wolfson assumed control and purported ownership of" the Assets, which David Wolfson "then used . . . as a conduit for money stolen from investors." *Id*. at 5–6.

While much of the foregoing was taking place, Plaintiff proceeded to file the cases before the court. All of those cases make the same or similar allegations made in Plaintiff's motions to intervene in the SEC Action, namely, that the Assets were wrongfully seized and sold as part of the SEC Action and that, as a result, Plaintiff's constitutional rights have been violated.

In most of the cases before the court, Plaintiff has filed multiple complaints, some without leave of court. In an effort to construe his cases and submissions liberally, *see Ledbetter*, 318 F.3d at 1187, the court will consider all of the complaints filed in each case.

The court will summarize all of the cases below. To the extent possible, the court will group the cases together that make similar or identical allegations.

Case Nos. 06-421, 06-422, 06-435, and 06-966

Although there are some additional defendants named in several of these four cases, in all four Plaintiff has named the United States of America, the SEC, Mr. Clayton, and the law firm of Holland & Hart. The allegations of each complaint are nearly identical. In fact, in many instances, it appears as though Plaintiff copied the language, word-for-word, from one complaint to the others. In each case, Plaintiff references the SEC Action and, in several cases, cites the case number. Although there are some minor differences among the four complaints, Plaintiff's basic allegation is that his constitutional rights were violated when the SEC, Mr. Clayton, and Holland & Hart seized and sold the Assets in the SEC Action. Plaintiff further asserts that the

SEC, Mr. Clayton, and Holland & Hart (and various other individuals, including Judge Kimball) entered into a scheme or conspiracy to defraud Plaintiff of the Assets.

In his prayer for relief in case no. 06-421, Plaintiff asks for a judgment of $100 million or the return of one of the Assets (the Adobe Ranch), plus punitive damages, plus court costs.  In case no. 06-422, Plaintiff asks for a judgment of at least $160 million and perhaps as much as $1 billion, or the return of all his properties and corporations, plus court costs, legal fees, and punitive damages.  In case no. 06-435, Plaintiff asks for a judgment of at least $160 million and perhaps as much as $1 billion, plus 10% interest, plus court costs, plus punitive damages.  Plaintiff also requests that the court require the defendants to post a $160 million dollar cash bond to cover the assets that were allegedly seized and destroyed by the defendants.  In case no. 06-966, Plaintiff asks for the return of one of the Assets (the Oasis property), a judgment against defendants for $600,000, a punitive damage award of $160 million, and interest of 10% for each year the defendants allegedly seized Plaintiff's property.  Plaintiff also requests that the court require the defendants to post a $50 million dollar bond to protect his claims.

Case Nos. 06-994 and 07-219

Again, while there are some additional defendants named in each of these two cases, in both of them, Plaintiff has named the United States of America, the SEC, Mr. Clayton, and the law firm of Holland & Hart.  In these cases, Plaintiff reiterates the same basic allegation from the four cases summarized above, namely, that his constitutional rights were violated when the SEC, Mr. Clayton, and Holland & Hart seized and sold the Assets in the SEC Action.

In addition, Plaintiff makes several allegations against other defendants.  In both cases, Plaintiff alleges that two prosecutors, David Esseks and Robert Hotz, wrongfully prosecuted him in a criminal case in New York.  Plaintiff further alleges that those two prosecutors conspired with the SEC and one of Plaintiff's attorneys, Christopher Bruno, to prosecute Plaintiff in that case and convict him of "something that is not a crime"[11] or "an act that is not a crime."[12]  In case no. 06-994, Plaintiff alleges that another one of his attorneys, Avraham Moskowitz, was also involved in that conspiracy.

In his prayer for relief in case no. 06-994, Plaintiff asks for a judgment of $300 million to compensate for his financial losses and for the imposition of punitive damages.   In his prayer for relief in case no. 07-219, Plaintiff asks for a judgment equal to the market value of the Assets, "which is approximately 150 million dollars and could be as much as 1 billion dollars."[13]  Plaintiff also asks that all attorneys representing the United States of America and the SEC in the alleged wrongdoing against him "have there [sic] license[s] to practice law be permanently suspended in the United States."[14]

---

[11]  Case no. 06-994, docket no. 16 at 2.

[12]  Case no. 07-219, docket no. 17 at 2.

[13]  *Id*. at 4.

[14]  *Id*.

Most Recent Written Submission in All Cases

Most recently, Plaintiff sent a letter to the court that is addressed to Judge Benson and specifically identifies all of the cases currently before the court.[15] In the letter, Plaintiff inquires about the status of the cases and requests that all of the complaints be served on the named defendants. In relevant part, the letter states:

> This [is] my second request for you to order that the U.S. Marshal[] serve the defendants in the following cases. . . . It has been almost two years since these complaints were filed. I feel that this court is violating my civil rights. I believe that you are withholding . . . my lawsuits because you are protecting Judge Dale Kimball[,] who is guilty of stealing my assets without legal jurisdiction to do so. I demand that you comply with my request. If not[,] I will be forced to go to the appeals court under a writ of mandamus.
> I am sure you are aware that I have been declared incompetent [b]y [United States District Judge John G.] Koeltl of [the Southern District of] New York. I am not incompetent. The judge did this[,] I believe[,] so that I could not be sentenced because he is well aware that he had a trial about something that is not a crime. My case in New York was a conspiracy which included the prosecutor David Esseks, Robert Hotz, Chris Bruno . . . [,] and District Court Judge John Koeltl. This case is as ridiculous as my criminal case that is before you. It is obvious that someone in Washington D.C. is behind this, trying to protect the [P]resident George Bush[,] his father George Bush Senior, . . . Bill Clinton[,] and others who are guilty of laundering millions of dollars of drug money and are guilty of conspiracy to murder the investigative reporter Jessica Savage. Also include[d] in this crime of the century [are] 13 NFL football teams that were laundering drug money. There [are] numerous other people who have been murdered. All of this was done with the blessing of the CIA and the mob. I suggest that these people think that they are above the

---

[15] *See* case no. 06-421, docket no. 30; case no. 06-422, docket no. 23; case no. 06-435, docket no. 28; case no. 06-966, docket no. 25; case no. 06-994, docket no. 22; case no. 07-219, docket no. 24.

> law because the have the power to cover up just about anything.
> These people [ha]ve the ability to indict people such as myself and
> my son for things that they know are not crimes. . . . Th[e]
> indictment is done to justify the stealing of my assets by Judge
> Kimball and the receiver Richard Clayton and David Broadbent.
> My assets were taken from me so that I would not have the ability
> to amount [sic] a major defensive against the criminals behind all
> of this. My son David[,] who is an attorney[,] . . . was indicted so
> that he could not get admitted to the bar and thus would be unable
> to help his father. What is happening in your court house is a
> disgrace[,] and you should be ashamed of helping these people[,]
> who are the criminals of the century.[16]

Plaintiff closes the letter by stating, "By the way[,] what I have told you in this letter is not imaginary but very real."[17]

## ANALYSIS

### I. Dismissal Under the In Forma Pauperis Statute

Whenever the court authorizes a party to proceed without the prepayment of fees under the in forma pauperis statute, the court is required to "dismiss the case at any time if the court determines that" the case (A) "fails to state a claim on which relief may be granted" or (B) "is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

#### A. Failure to State a Claim

In determining whether a complaint fails to state a claim for relief under the in forma pauperis statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kay v.*

---

[16] *Id.* at 1–2.

[17] *Id.* at 3.

*Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).  Under that standard, the court "look[s] for plausibility in th[e] complaint."  *Id*. at 1218 (quotations and citations omitted) (second alteration in original).  More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)) (other quotations and citation omitted) (second and third alterations in original).  In addition, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on [r]ule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007); *see also Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001); *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

    In all of Plaintiff's cases before the court, he either references or specifically cites to the SEC Action.  Accordingly, the court takes judicial notice of the filings in the SEC Action, including Judge Stewart's ruling on Plaintiff's motions to intervene in the SEC Action and the Tenth Circuit's order and judgment affirming that ruling.  *See Tellabs, Inc.*, 127 S. Ct. at 2509; *Grynberg*, 390 F.3d at 1278 n.1; *Fleming Cos.*, 264 F.3d at 1251 n.4; *Van Woudenberg*, 211 F.3d at 568.

The common, underlying allegation contained in all of Plaintiff's cases before the court is that his constitutional rights were violated when the SEC, Mr. Clayton, and Holland & Hart seized and sold the Assets in the SEC Action. In order for any claim for relief based on that allegation to be valid, the Assets must have actually belonged to or been owned by Plaintiff. However, as noted above, in denying Plaintiff's motions to intervene in the SEC Action, Judge Stewart determined that Plaintiff had made several bald assertions about his ownership of the Assets but offered no supporting evidence. Judge Stewart also determined, based on the evidence presented regarding ownership, that the Assets were properly included in the receivership in the SEC Action as assets under the control of David Wolfson. Plaintiff's appeal of that ruling was unsuccessful. *See Sec. & Exch. Comm'n v. Wolfson*, No. 08-4073 (10th Cir. Oct. 8, 2008). As previously noted, in affirming Judge Stewart's ruling, the Tenth Circuit determined that while Plaintiff claimed he had "merely granted his son power of attorney because he was going to prison, the evidence of record shows that David Wolfson assumed control and purported ownership of" the Assets, which David Wolfson "then used . . . as a conduit for money stolen from investors." *Id*. at 5–6.

In light of those findings and determinations, of which the court has taken judicial notice, the court concludes that Plaintiff's allegations concerning the purported improper seizure and sale of the Assets in the SEC Action do not "plausibly support . . . legal claim[s] for relief." *Bemis*, 500 F.3d at 1218 (quotations and citation omitted).

The court now turns to Plaintiff's remaining claims. Under a liberal construction of Plaintiff's complaints in case no. 06-994 and case no. 07-219, it appears that he may be

attempting to assert claims for wrongful prosecution, a conspiracy to accomplish that wrongful prosecution, and ineffective assistance of counsel, all of which allegedly took place in a criminal case brought against Plaintiff in New York.

As to his claims for wrongful prosecution and conspiracy, Plaintiff has not provided sufficient factual allegations to support them. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (providing that the "broad reading" accorded to a pro se plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based"). Plaintiff makes several conclusory allegations, including those indicating that he was prosecuted for "something that is not a crime"[18] or "an act that is not a crime."[19] He has not, however, provided any well-pleaded factual allegations to demonstrate any wrongdoing on the part of the prosecutors in question or to show either the existence of or overt acts taken in furtherance of any conspiracy. *See id*. ("[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."). In addition, Plaintiff has failed to demonstrate why the doctrine of prosecutorial immunity would not act as a bar to a civil rights suit against the prosecutors in question. *See Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991) ("It is well established that prosecutors are absolutely immune from suit under [42 U.S.C. §] 1983 concerning activities 'intimately associated with the judicial . . . process,' such as

---

[18] Case no. 06-994, docket no. 16 at 2.

[19] Case no. 07-219, docket no. 17 at 2.

initiating and pursuing criminal prosecutions." (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)) (second alteration in original)).

As to any claims for ineffective assistance, Plaintiff has not brought them in the proper type of action. *See United States v. Galloway*, 56 F.3d 1239, 1242–43 (10th Cir. 1995) (en banc) (stating that ineffective assistance of counsel claims should be brought in the first petition filed under 28 U.S.C. § 2255). Further, even if the court were to construe Plaintiff's ineffective assistance claims as a petition under § 2255, they would still fail. Given that Plaintiff has admitted that he was convicted and sentenced in New York, this court would be an improper venue for any § 2255 petition related to that criminal case. *See* 28 U.S.C. § 2255(a) (providing that the petition should be filed with the court that "imposed the sentence"). In addition, it also appears that any such petition would be time-barred. *See id*. § 2255(f) (providing a one-year period of limitation for a § 2255 petition).

Based on the foregoing, the court concludes that all of the allegations in Plaintiff's cases before the court fail to "plausibly support . . . legal claim[s] for relief." *Bemis*, 500 F.3d at 1218 (quotations and citation omitted). Consequently, the court concludes that all of Plaintiff's cases before the court should be dismissed under the in forma pauperis statute because they "fail[] to state . . . claim[s] on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Frivolousness

While the court has already concluded that Plaintiff's cases should be dismissed under the in forma pauperis statute for failing to state claims on which relief can be granted, *see id*., the

court has also reached the alternative conclusion that Plaintiff's cases should be dismissed as frivolous under the in forma pauperis statute. *See id*. § 1915(e)(2)(B)(i).

The United States Supreme Court has construed the term "frivolous" within the context of the in forma pauperis statute by stating that

> a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . . [The in forma pauperis statute]'s term "frivolous," when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation.

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The in forma pauperis statute

> accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit . . . and claims of infringement of a legal interest [that] clearly does not exist . . . . Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.

*Id*. at 327-28; *see also Bellmon*, 935 F.2d at 1108-10

After carefully reviewing Plaintiff's complaints and other filings, the court has determined that all of Plaintiff's cases before the court fall under the second of those two categories because they include factual allegations that "rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), and describe "fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 328. Throughout his complaints and other filings, Plaintiff makes clear his belief that any adverse action that has been taken against him or his son is the direct result of a large, overarching conspiracy involving, among others, the United States

of America, the SEC, Judge Kimball, Mr. Clayton, Holland & Hart, Judge Koeltl, two prosecutors in New York, and his attorneys in New York. In addition, in his most recent written submission, Plaintiff has identified other members of that alleged conspiracy. At the risk of being repetitive, the court again quotes the following passage from Plaintiff's letter to Judge Benson:

> It is obvious that someone in Washington D.C. is behind this, trying to protect the [P]resident George Bush[,] his father George Bush Senior, . . . Bill Clinton[,] and others who are guilty of laundering millions of dollars of drug money and are guilty of conspiracy to murder the investigative reporter Jessica Savage. Also include[d] in this crime of the century [are] 13 NFL football teams that were laundering drug money. There [are] numerous other people who have been murdered. All of this was done with the blessing of the CIA and the mob. I suggest that these people think that they are above the law because the have the power to cover up just about anything. These people [ha]ve the ability to indict people such as myself and my son for things that they know are not crimes. . . . Th[e] indictment is done to justify the stealing of my assets by Judge Kimball and the receiver Richard Clayton and David Broadbent. My assets were taken from me so that I would not have the ability to amount [sic] a major defensive against the criminals behind all of this. My son David[,] who is an attorney[,] . . . was indicted so that he could not get admitted to the bar and thus would be unable to help his father. What is happening in your court house is a disgrace[,] and you should be ashamed of helping these people[,] who are the criminals of the century.[20]

Plaintiff's complaints and other filings, and particularly his most recent written submission, demonstrate to the court that he may be suffering from some sort of psychological or psychiatric problems. Indeed, by Plaintiff's own admission, it appears that Judge Koeltl recently

---

[20] Case no. 06-421, docket no. 30 at 1–2; case no. 06-422, docket no. 23 at 1–2; case no. 06-435, docket no. 28 at 1–2; case no. 06-966, docket no. 25 at 1–2; case no. 06-994, docket no. 22 at 1–2; case no. 07-219, docket no. 24 at 1–2.

declared Plaintiff to be incompetent. While the court is sympathetic to Plaintiff's situation, that has no effect on the court's duty under the in forma pauperis statute to dismiss Plaintiff's cases once the court has determined that they are frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i). Based on the foregoing, the court concludes that Plaintiff's cases before the court are frivolous under the in forma pauperis statute and, therefore, should be dismissed. *See id*.

## CONCLUSION AND RECOMMENDATION

Pursuant to the in forma pauperis statute, the court has concluded that all of Plaintiff's cases before the court "fail[] to state . . . claim[s] on which relief may be granted." *Id*. § 1915(e)(2)(B)(ii). Alternatively, and also pursuant to the in forma pauperis statute, the court has concluded that all of Plaintiff's cases before the court are "frivolous." *Id*. § 1915(e)(2)(B)(i). For those independent and alternative reasons, **IT IS HEREBY RECOMMENDED** that all of Plaintiff's cases before the court be **DISMISSED** under the in forma pauperis statute. *See id*. § 1915(e)(2)(B)(i)–(ii).

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See id*. § 636(b)(1)(C). The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it. *See id*. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 16th day of October, 2008.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge